Francis David **OYEDEJI**, Petitioner

v.

John **ASHCROFT**, et al., Respondents

No. CIV.A.3:CV–02–2032.

United States District Court,
M.D. Pennsylvania.

Aug. 24, 2004.

Daniel M. Pell, York, PA, for Plaintiff.

Daryl Ford Bloom, U.S. Attorney's Office, Harrisburg, PA, for Defendants.

### MEMORANDUM

VANASKIE, Chief Judge.

This habeas corpus proceeding under 28 U.S.C. § 2241 concerns the constitutionality of the prolonged detention of a criminal alien while he awaits a decision from a United States Court of Appeals on his petition for review of a final order of removal. Finding that the Bureau of Immigrations and Customs Enforcement ("BICE") has given only perfunctory consideration to release of Petitioner; that Petitioner's prior convictions of petty larceny do not substantiate conclusions that he poses a current danger to the community and a flight risk; and that the incarceration of Petitioner for more than four years since he petitioned for stay of the removal order is unreasonable, I will grant the petition for habeas corpus relief and direct that Petitioner be released forthwith, subject to appropriate conditions of supervision.

## I. BACKGROUND

Petitioner Francis David Oyedeji is a native and citizen of Nigeria. He came to the United States in October of 1993, when he was 12 years old. He was admitted to the United States as a "visitor for pleasure," with his authorization to remain in the United States expiring on April 11, 1994. He has remained in the United States without authorization.

In December of 1997, a Notice to Appear was issued by the Immigration and Naturalization Service, the predecessor to BICE, charging that Oyedeji was subject to removal from the United States for having remained for a time longer than permitted and for having been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. The Notice to Appear alleged that in August of 1997, when Oyedeji was 16 years old, he had been sentenced in the Criminal Court of the City of New York, County of New York, on the offense of petit larceny, in violation of N.Y. Penal Law § 155.25, and that on or about September 19, 1997, Oyedeji had been sentenced in the New York County of Kings on a separate petit larceny conviction. On February 26, 1998, Oyedeji was taken into BICE custody as a juvenile from the Rikers Island Prison. On April 15, 1998, the 17 year-old Oyedeji was released to the custody of his mother.

In an oral decision issued August 26, 1998, an Immigration Judge found Oyedeji deportable as charged. Specifically, the Immigration Judge found that Oyedeji had conceded that he was removable under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), because he had remained in the United States without authorization. The Immigration Judge further found that the two petit larceny convictions, which Oyedeji had described as shoplifting crimes, constituted two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, warranting removal under 8 U.S.C. § 1227(a)(2)(A)(ii). The Immigration Judge also denied Oyedeji's application for asylum under INA § 208(a), 8 U.S.C. § 1158(a), as well as his application for withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). Oyedeji appealed these rulings to the Board of Immigration Appeals ("BIA").

During the pendency of the appeal to the BIA, Oyedeji was convicted and sentenced again in New York state court for the offense of petit larceny. According to

the Post Order Custody Review Worksheet included as Exhibit "B" to the Response to the Habeas Corpus Petition, Oyedeji was convicted on April 22, 1999, and was taken into the custody of BICE on June 25, 1999. He has remained in BICE custody since that date.

On January 20, 2000, the BIA affirmed the Immigration Judge's ruling. On February 22, 2000, Oyedeji, represented by counsel, filed a petition for review with the United States Court of Appeals for the Second Circuit, and requested a stay of removal pending a decision on the petition for review. No formal action was taken on the request for a stay of removal for approximately four (4) years.

According to Respondents, the Second Circuit and the United States Attorney's Office have an agreement which "provides that when an alien files a Petition for Review *and* a request for a stay of removal in the Second Circuit, the Court of Appeals contacts the United States Attorney's Office to obtain an agreement that [BICE] will not remove the alien from the United States until the Second Circuit renders a decision on the Motion for Stay of Removal." (February 26, 2004 Status Report at 1–2.) Respondents observe that "the Second Circuit, the United States Attorney's Office and [BICE] view the forbearance policy as a binding stay of removal." (*Id.* at 2.) Respondents maintain that, in light of this effective stay of removal, the 90–day removal period set forth in 8 U.S.C. § 1231 has been suspended.[1]

In July of 2000, a "post-order custody review" of Oyedeji's status was undertaken by BICE. No interview of Oyedeji occurred in connection with this custody review. Instead, only a file review was undertaken. Observing that Oyedeji had failed to provide any documentation of employment prospects should he be released, that he had previously failed to appear for court-ordered proceedings, and that he had not refrained from criminal activity after his initial release from BICE custody, the BICE reviewing officers determined that detention should be continued. (Exhibit "B" to the Response to the Habeas Corpus Petition.)

Oyedeji's detention status was again considered by BICE in August of 2001. By letter dated August 9, 2001, BICE informed Oyedeji that it had again been determined that he would not be released. (Exhibit "E" to the Response to Habeas Corpus Petition.) The letter further informed Oyedeji that it had been determined that his repatriation was feasible upon completion of legal proceedings, but that, if Petitioner believed that his removal was not possible in the reasonably foreseeable future, he could submit evidence in support of a request for reconsideration. There is no indication that Oyedeji sought reconsideration of this determination.

It does not appear that BICE undertook to consider Oyedeji's detention status in 2002. On November 12, 2002, Oyedeji, represented by counsel, commenced this habeas corpus proceeding to challenge his

---

1. Pursuant to § 1231(a), the Attorney General has ninety (90) days within which to remove an alien, with this 90–day period beginning on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Detention of an alien is mandatory during the 90–day removal period. 8 U.S.C. § 1231(a)(2). The Attorney General has discretion to continue the detention of a criminal alien if not deported within the removal period. 8 U.S.C. § 1231(a)(6).

continuing detention. The habeas petition, citing, *inter alia, Patel v. Zemski,* 275 F.3d 299 (3d Cir.2001), *overruled in part by Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), contended that the mandatory detention provision of 8 U.S.C. § 1226(c) was unconstitutional.[2] In answering the habeas corpus petition, Respondents asserted that Oyedeji was not being detained pursuant to the mandatory detention provisions of 8 U.S.C. § 1226(c), but was instead being detained pursuant to 8 U.S.C. § 1231. Respondents further asserted that *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), was inapplicable because the period of time during which removal was to be effected had not run as a consequence of the stay of removal that Respondents considered to be in effect.

Magistrate Judge Thomas M. Blewitt, to whom this matter had been referred, agreed with the Respondents' position. Specifically, Magistrate Judge Blewitt recommended that relief be denied because the effective stay of removal precluded the running of the removal period, thereby rendering *Zadvydas* inapplicable. Magistrate Judge Blewitt also found that the file reviews of Oyedeji's detention status satisfied due process, reasoning that Oyedeji "had the opportunity to show that his removal was not possible in the reasonably foreseeable future and that he is taking positive measures to facilitate his removal." (Report and Recommendation at 9.)

Oyedeji objected to the Report and Recommendation, arguing that, because no stay of removal had been entered, the period of time within which removal should have occurred had expired and the continuing detention of Oyedeji was unreasonable. By Memorandum and Order entered on December 30, 2003, I agreed with Oye-

deji's contention that the agreement between the Second Circuit and the United States Attorney's Office did not suspend the running of the removal period. I further found that Oyedeji was entitled to consideration for release from confinement in accordance with regulations promulgated at 8 C.F.R. § 241.4, explaining:

> An alien who has filed a petition for review of an order of removal but who has not received a stay of deportation is subject to the provisions of 8 U.S.C. § 1231. Detention beyond the removal period may be maintained only upon compliance with applicable process. In the case of criminal aliens, such as Petitioner, that process is specified in 8 C.F.R. § 241.4. It is evident that Petitioner has not received such process.

(Memorandum and Order of December 30, 2003 at 9.) The petition for writ of habeas corpus was granted conditionally, with Respondent afforded a period of sixty (60) days within which to provide the post-removal custody process set forth in 8 C.F.R. § 241.4. Respondent was further directed to file a status report with the Court no later than February 28, 2004.

On January 26, 2004, a BICE District Director issued a "Decision to Continue Detention Upon Expiration of Removal Period." Consideration for release was limited to a review of the file, including information Oyedeji had submitted. No interview was conducted.

The decision to continue detention was based upon Oyedeji's prior record, including the fact that three bench warrants had been issued for his failure to appear at criminal proceedings. It was also based upon "a stay of removal," despite this Court's holding that there was no effective stay of removal at that time. Finally, the

---

**2.** Section 1226(c) of Title 8 U.S.C. mandates detention of an alien sought to be removed on the basis of certain criminal convictions during the administrative removal proceedings.

decision noted that Oyedeji had failed to submit "sufficient evidence to show that you have rehabilitated while you have been incarcerated, and you have not provided sufficient evidence to show that you would not present a flight risk if you were released."

On February 26, 2004, Respondents filed the required Status Report. In addition to informing the Court that a decision had been made to continue the detention of Oyedeji, Respondents advised the court that the Second Circuit had now issued a written order staying execution of the removal order.

Following a telephonic status conference with counsel for the parties, this Court, by Order dated March 22, 2004, re-opened this case and directed the filing of memoranda of law addressing the merits of the decision to continue Oyedeji's detention. The parties have complied with this directive, and the matter is now ripe for disposition.

## II. DISCUSSION

■ Prolonged detention raises substantial questions of constitutional dimensions. *Jabir v. Ashcroft*, No. Civ. A. 03–2480, 2004 WL 60318, at *6 (E.D.La. Jan. 8, 2004). "[D]eportable aliens, even those who [have] already been ordered removed, possess a substantive Fifth Amendment liberty interest . . . ." *Ly v. Hansen*, 351 F.3d 263, 269 (6th Cir.2003). Accordingly, aliens under an order of removal are entitled to an opportunity to be heard on the question of prolonged detention, and they may be kept locked up only if incarceration is justified. As recognized in *Ngo v. INS*, 192 F.3d 390, 397 (3d Cir.1999):

[C]ase law holds there is no constitutional impediment to the indefinite detention of an alien with a criminal record under a final order of exclusion, deportation, or removal, *if* (1) there is a possibility of his eventual departure; (2) there are adequate and reasonable provisions for the grant of parole; and (3) detention is necessary to prevent a risk of flight or a threat to the community. (Emphasis added.)

■ In this case, there is clearly a possibility of the eventual removal of Oyedeji. Travel documents to remove Oyedeji to Nigeria had been obtained, and only the effective stay of his removal prevented BICE from executing the removal order. As applied to Oyedeji, however, there do not appear to be any adequate and reasonable provisions for his release.

Regulations have been promulgated to cover the *Zadvydas* scenario—a final order of removal not subject to a stay but where the alien's native country is unwilling to accept the alien. *See* 8 C.F.R. § 241.13. Regulations for parole have also been promulgated where a criminal alien is held beyond the removal period. *See* 8 C.F.R. § 241.4. But neither regulation nor statute clearly covers an alien subject to a final removal order, but for whom the removal period has been suspended by a stay of removal.

It is also apparent that Oyedeji has not received meaningful consideration for release. The record does not show that BICE has applied to Oyedeji the provisions of 8 C.F.R. § 241.4. This regulation, governing continued detention of criminal aliens "beyond the removal period," requires periodic personal interviews of the alien, an opportunity that has not been accorded to Oyedeji. It is apparently the Respondents' position in this matter that he is not entitled to consideration for release under the provisions of § 241.4 while there remains a stay of removal. Thus, respondents, citing *Zadvydas*, assert that "Oyedeji is presumed repatriatable for at least 180 days and until he proves other-

wise, during this period he is presumed to hold the keys to his cell. As such, he lacks standing to complain of his continued detention." (Brief in Response to Petitioner's Brief in Support of Release at 6.)

The premise of the Respondents' argument appears to be that *Zadvydas* is limited to those aliens for whom no stay of removal is in place and the presumptive period for removal has expired.[3] *Zadvydas* recognized the constitutional implications of prolonged detention for those subject to a valid order of removal. Prolonged incarceration for an alien whose potentially meritorious challenge to removal is part of a congested docket is indistinguishable from lengthy incarceration because the alien's native country refuses to issue travel documents.[4]

The price for securing a stay of removal should not be continuing incarceration. The Supreme Court, in sustaining the authority of Congress to mandate detention of criminal aliens during *administrative* removal proceedings, stressed that such detention would be only "for the brief period necessary for their removal proceedings." *Demore v. Kim*, 538 U.S. 510, 513, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). Justice Kennedy, whose concurring opinion provided the fifth vote for the majority opinion in *Demore*, recognized that a lawful permanent resident "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532, 123 S.Ct. 1708 (Kennedy, J., concurring). As noted

above, excludable aliens are also protected by the substantive component of the Due Process Clause. *See Ngo*, 192 F.3d at 396.

Oyedeji should not be effectively punished for pursuing applicable legal remedies. As remarked in *Ly*, 351 F.3d at 272:

> An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.

 "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491. In *Zadvydas*, the Court stated that "government detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and 'narrow' non-punitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* The fact that the alien has procured a stay of removal does not undermine the bedrock principle that there must be a "special justification" outweighing the alien's constitutionally-protected interest in liberty, as well as "adequate procedural protections" to continue incarceration while the

---

**3.** *Zadvydas* held that the statute authorizing post-removal order detention, "read in light of the Constitution's demands," limits an alien's post-removal period detention to a period reasonably necessary to bring about that alien's removal from the United States. 533 U.S. at 689, 121 S.Ct. 2491. The Court recognized that a period of six months was a presumptively reasonable period of detention,

after which the alien was entitled to be heard on whether release should be ordered. *Id.* at 701, 121 S.Ct. 2491.

**4.** According to Petitioner's counsel, petitions for review of removal orders have increased 300% in the last year in the Second Circuit. (Brief in Supp. of Release at 4 n. 1.)

alien litigates his claims. *Id.* at 690, 691, 121 S.Ct. 2491.

▆▆▆ *Zadvydas* and *Ngo,* although involving different factual scenarios, stand for the proposition that where, as here, detention becomes prolonged, "special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable." *Ngo,* 192 F.3d at 398. "The stakes are high and ... grudging and perfunctory review is not enough to satisfy the due process right to liberty .... " *Id.* The assessment of flight risk and danger to the community must be made on a current basis. *Id.* "To presume dangerousness to the community and risk of flight based solely on [an alien's] past record does not satisfy due process." *Id.* at 398–99.

▆▆▆ Of course, an alien is not entitled to release simply because a stay of removal has been ordered.[5] This Court's December 30, 2003 Order directed that BICE apply to Oyedeji the process set forth in 8 C.F.R. § 241.4. It is evident that BICE did not comply with this directive.

The regulations contemplate a personal interview if release is not recommended. 8 C.F.R. § 241.4(*l*)(3). Oyedeji was not accorded this rudimentary element of due process. He was not afforded the opportunity to plead his case or explain entries in documents. He has been denied release solely on a reading of his file. No inquiry has been made as to the circumstances surrounding the issuance of bench warrants. Nor has there been any inquiry made into the circumstances surrounding the criminal convictions, characterized by Oyedeji as shoplifting offenses. In *Ngo,* our Court of Appeals indicated that custody decisions based solely on a file review,

without any opportunity to be heard in person, is inadequate. *Ngo,* 192 F.3d at 398.

Other than the petit larceny convictions and the issuance of bench warrants, Respondents have pointed to no evidence that would support a determination that Oyedeji is a danger to the community or such a flight risk that no conditions of supervision could assure his presence in the event that his petition for review is unsuccessful. A consideration of the criteria for release listed in 8 C.F.R. § 241.4(e) supports a decision favorable to Oyedeji. Specifically, travel documents for Oyedeji are not available because of the stay of removal; Oyedeji appears to be a non-violent person and likely to remain so if released; and the petit larceny offenses hardly pose a threat to the community. In terms of the factors for consideration of release set forth in § 241.4(f), Oyedeji does not have any disciplinary infractions or incident reports while incarcerated or in BICE custody; his criminal convictions are not for serious offenses; there is no evidence of any mental health problems or refusal to participate in work, educational or vocational programs while incarcerated; his mother and siblings reside in the United States; and there is no evidence of a history of escapes.

▆▆▆ In short, only a criminal record that is now more than seven years old supports a decision to continue detention. "Due process is not satisfied ... by rubberstamp denials based on temporally distant offenses." *Ngo,* 192 F.3d at 398. Accordingly, release from confinement, subject to appropriate conditions of supervision, is mandated in this case.

---

**5.** A stay of removal, however, could signify that the alien has shown some likelihood of

prevailing on the merits. *See Mohammed v. Reno,* 309 F.3d 95, 101–02 (2d Cir.2002).

## III. CONCLUSION

While a stay of removal may suspend the running of the removal period, it does not toll the clock on the life of a person held in prison awaiting adjudication of the merits of his challenge to the validity of a removal order. Oyedeji has spent his 19th, 20th, 21st, 22nd, and 23rd birthdays in custody while he pursues what must be presumed to be a good faith challenge to an order requiring his removal to a country that he left as a child. He has been imprisoned awaiting removal for much longer than the statutory maximum for his petit larceny convictions.[6] Fundamental fairness demands that meaningful consideration be given to the release of an alien in Oyedeji's situation. Respondents have failed to provide such consideration here, and habeas corpus relief is therefore warranted. An appropriate Order follows.

### *ORDER*

**NOW, THIS 24th DAY OF AUGUST, 2004,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **GRANTED.** Respondents shall release Petitioner forthwith, subject to reasonable conditions of supervision as determined in accordance with applicable law and regulations.

2. Within **twenty (20) days** from the date of this Order, Respondents shall report to this Court the fact of Petitioner's release and any conditions imposed on such release.

3. The Clerk of Court is directed to mark this matter **CLOSED.**

---

6. Petit larceny is a class A misdemeanor. *See* N.Y. Penal Law § 155.25. The maximum term of imprisonment for a class A misdemeanor is one year. *See* N.Y. Penal Law § 70.15.