PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1402
_____

JOSE JUAN CHAVEZ-ALVAREZ,
                                    Appellant

v.

WARDEN YORK COUNTY PRISON;
THOMAS DECKER, In his official capacity as Philadelphia
Field Office Director for United States Immigration
and Customs Enforcement; JOHN T. MORTON, In his
official capacity as Assistant Secretary of United States
Immigration and Customs Enforcement; SECRETARY
UNITED STATES DEPARTMENT OF HOMELAND
SECURITY; ATTORNEY GENERAL
UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-12-cv-02130)
District Judge: Honorable John E. Jones, III

ARGUED
November 18, 2014

BEFORE:  RENDELL, JORDAN,
and NYGAARD, *Circuit Judges*


(Filed: April 9, 2015)

Valerie A. Burch, Esq. [Argued]
The Shagin Law Group
120 South Street
The Inns of St. Jude
Harrisburg, PA 17101
         *Counsel for Appellant*

Leon Fresco, Esq. [Argued]
United States Department of Justice
Civil Division, Room 3129
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Katherine E.M. Goettel, Esq.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868
Ben Franklin Station
Washington, DC 20001

Timothy S. Judge, Esq.
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

Troy D. Liggett, Esq.

United States Department of Justice
Office of Immigration Litigation
Room 6036
P. O. Box 868
Ben Franklin Station
Washington, DC  20001

Mark E. Morrison, Esq.
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108
          *Counsel for Appellees*

Michael K.T. Tan, Esq. (Argued)
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA 94111
          *Counsel for Amicus Appellants*

_____

OPINION OF THE COURT
_____

NYGAARD, *Circuit Judge.*

Jose Juan Chavez-Alvarez appeals the District Court's denial of his petition for a writ of habeas corpus.  He contends that the Government is violating his right to due process by detaining him, pursuant to 8 U.S.C. §1226(c),[1] without a bond

_____

[1] "The Attorney General shall take into custody any alien who . . . (B) is deportable by reason of having committed any

3

hearing since June 5, 2012. We will reverse the District Court's order and remand with instruction to grant the writ of habeas corpus and ensure that Chavez-Alvarez is promptly afforded a bond hearing.

## I.

Chavez-Alvarez, a citizen of Mexico, entered the United States at a young age without inspection and later adjusted to lawful permanent resident status. He married a United States citizen, but is now divorced. He has two sons who are United States citizens. In 2000, while serving in the United States Army in South Korea, a General Court-Martial convicted him of giving false official statements (10 U.S.C. § 907), sodomy (10 U.S.C. § 925), and violating the general article (10 U.S.C. § 934).[2] It sentenced him to eighteen months of imprisonment. He served thirteen months in prison and was released on February 4, 2002.

---

offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B); *See also* 8 C.F.R. § 241.3.

[2] "Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court." 10 U.S.C. § 934.

Immigration Customs and Enforcement agents arrested Chavez-Alvarez on June 5, 2012, and served him with a Notice to Appear, charging him with being removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for his conviction on an aggravated felony. He was ordered detained without bond under 8 U.S.C. §1226(c) and sent to York County Prison.

The total number of days that Chavez-Alvarez has been held in civil detention since his arrest, of itself, gives us reason for pause. However, we judge the reasonableness of a detention during the removal process by "tak[ing] into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case." *Diop v. ICE/Homeland Sec*., 656 F.3d 221, 234 (3d Cir. 2011). Our close review of this record has been significant to our deliberation about the constitutionality of Chavez-Alvarez's detention. And so, we begin by summarizing what happened in the Immigration Court.

## II.

Shortly after his arrest, Chavez-Alvarez obtained counsel and challenged the Government's case for removal. The Immigration Judge accepted pleadings on June 19, 2012; Chavez-Alvarez argued against removability. Ten days later, the Government, pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii), added a charge that Chavez-Alvarez was removable on the ground of being convicted for two or more crimes involving moral turpitude. Roughly five weeks after he was arrested, on July 11, 2012, the Immigration Judge denied Chavez-Alvarez's request for a bail hearing—filed two days after his arrest on June 7, 2012—ruling that he was subject to

mandatory detention under section 1226(c) in compliance with *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999).

Between August and October of 2012, the Immigration Judge held two hearings. During this time, Chavez-Alvarez denied that he was removable on the new charge, and challenged the Government's claim that his earlier conviction made him removable. Two issues emerged during these hearings: whether the Manual for Courts Marshal—which the Government used to categorize his crime—has the effect of law; and, whether Chavez-Alvarez's eighteen month sentence arose from all of his crimes, or just the sodomy conviction. Chavez-Alvarez said at the October hearing that, if necessary, he would request a 212(h) waiver of inadmissibility, pursuant to 8 U.S.C. § 1182(h).

The fifth hearing was held on November 1, 2012, almost five months into Chavez-Alvarez's detention. The Immigration Judge ruled that Chavez-Alvarez was removable. Specifically, he concluded that sodomy by force is a crime of violence under 18 U.S.C. § 16(a) and (b), qualifying as an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). But, the Immigration Judge also told Chavez-Alvarez that he would consider a 212(h) waiver, and encouraged him to have a petition for an alien relative (Form I-130) filed on his behalf to accompany the waiver.

Over the next four months, the Immigration Judge held four more hearings. During this time, it became clear that Chavez-Alvarez was seeking only a standalone waiver.[3] This

---

[3] The Immigration Judge acted on an apparent credible possibility that Chavez-Alvarez would marry. Later, Chavez-

brought up a question of whether and when Chavez-Alvarez had been admitted to the country. The Immigration Judge then requested briefing on the implications of the ruling in *Matter of Sanchez*, 17 I. & N. Dec. 218 (BIA 1980), to Chavez-Alvarez's eligibility for the waiver.

On March 5, 2013, at the final hearing, nine months after he was arrested and detained, the Immigration Judge issued an oral decision denying Chavez-Alvarez's application for a 212(h) waiver. This was the sole remaining issue. Chavez-Alvarez stated that he was reserving his right to appeal.

On April 3, 2013, approximately 10 months after his arrest and detention, Chavez-Alvarez appealed to the Board of Immigration Appeals (BIA). The Government filed a motion with the BIA for a summary affirmance, but the BIA affirmed the Immigration Judge's decision in a precedential decision on March 14, 2014, over twenty-one months after Chavez-Alvarez's arrest and detention. Chavez-Alvarez then petitioned this Court for review of the BIA's decision.[4]

---

Alvarez told the Immigration Judge that he was no longer considering marriage.

[4] On October 25, 2012, Chavez-Alvarez filed a petition for writ of habeas corpus. The District Court granted Chavez-Alvarez's order to show cause on October 31, 2012. It referred the petition to the Magistrate Judge on December 7, 2012. The Magistrate Judge held oral argument on May 29, 2013 and issued a report and recommendation on December 18, 2013, recommending the District Court deny the writ. Chavez-Alvarez objected to the report and recommendation

7

III.

Chavez-Alvarez says that the Government is violating his due process rights by detaining him for an unreasonable amount of time without conducting a hearing at which he would have the opportunity to be released on bond.[5]  The law applying to Chavez-Alvarez's issue is well established.  It was long ago decided that the Government has authority to detain any alien during removal proceedings.  *Wong Wing v. United States,* 163 U.S. 228, 235 (1896).  Before 1996, significant numbers of aliens convicted of serious crimes were taking advantage of their release on bond as an opportunity to flee, avoid removal, and commit more crimes. *Demore v. Kim,* 538 U.S. 510, 518-19 (2003).  Congress fixed this problem by enacting section 1226(c), expanding the range of serious crimes for which the Government was required to detain convicted aliens.  Notably, section 1226(c) does not give the Attorney General any authority to release these aliens on bond.  *Id.* at 521.

The Supreme Court left no doubt that the Government's authority under section 1226(c) to detain aliens without an opportunity for bond complies with the

---

on January 2, 2014.  The District Court adopted the Magistrate Judge's recommendation on January 22, 2014, almost twenty months after Chavez-Alvarez was arrested and detained.  Chavez-Alvarez appealed to this court.  His case was docketed on February 21, 2014.

[5] We have jurisdiction over this appeal under 28 U.S.C. § 1291 and 28 U.S.C. § 2255.

Constitution. *Id.* at 531. However, as we discuss below, we read *Demore* as also recognizing that there are limits to this power. *Diop,* 656 F.3d 221; *Leslie v. Attorney Gen. of the United States*, 678 F.3d 265 (3d Cir. 2012).

When the Supreme Court upheld the constitutionality of the law in *Demore*, it also gave us insight into how, from a due process perspective, section 1226(c)'s allowance of detention without bail worked. The Court reiterated the fundamental idea that aliens are protected by constitutional due process. *Demore*, 538 U.S. at 523 (citing *Reno v. Flores,* 507 U.S. 292, 306 (1993)). But, it put the alien's issue in perspective, saying "'[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens."' *Id.* at 521 (quoting *Matthews v. Diaz*, 426 U.S. 67, 79-80 (1976)). The Court went on to say that applying "'reasonable presumptions and generic rules"' to groups of aliens—for purposes of due process—can be consistent with the idea that aliens can be treated differently. *Id.* at 526 (quoting *Flores*, 507 at 313); *see also Carlson v. Landon*, 342 U.S. 524 (1952).

The Court, in essence, concluded that Congress lawfully required the Attorney General to make presumptions of flight and dangerousness about the alien solely because he belonged to the group of aliens convicted of the types of crimes defined in section 1226(c).[6] These presumptions,

---

[6] *Demore* expresses the goal of the statute in terms of preventing flight (ensuring that aliens who are subject to a removal order will actually be removed (538 U.S. at 528.)). However, the Supreme Court also considered data that was

9

*Demore* says, justified the alien's detention and eliminated the need for an individualized bond hearing: they were the reason the alien's six-month detention without a bond hearing was not an arbitrary deprivation of liberty. *Id.* at 528 ("Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed.").

Eight years after *Demore*, we addressed the question of whether the Government's use of section 1226(c) to detain an alien for almost three years without a bond hearing complied with due process. *Diop*, 656 F.3d 221. Citing earlier decisions by the Supreme Court, we recognized the importance of judicial deference to the Executive Branch in immigration matters, *Negusie v. Holder*, 555 U.S. 511 (2009), but also noted that a court must use its independent judgment to decide whether a detention is "'reasonably necessary to secure removal.'" *Diop*, 656 F.3d at 234 (quoting *Zadvydas*, 533 U.S. at 699). Although the Government cited to *Demore* and argued it had authority to detain Diop for as long as the removal process takes, we highlighted Justice Kennedy's concurring opinion in *Demore*, which made it clear that balancing competing interests was implicit in the Supreme Court's ruling that section 1226(c) was constitutional. He said:

---

examined by Congress on crime rates of aliens who had skipped bail. *Id.* at 518-19. Therefore, in *Diop*, we said that the purpose of the statute is to "ensur[e] that an alien attends removal proceedings and that his release will not pose a danger to the community." *Diop*, 656 F.3d at 231.

10

> [S]ince the Due Process Clause
> prohibits arbitrary deprivations of
> liberty, a lawful permanent
> resident alien such as respondent
> could be entitled to an
> individualized determination as to
> his risk of flight and
> dangerousness if the continued
> detention became unreasonable or
> unjustified.

*Demore*, 538 U.S. at 532 (citing *Zadvydas v. Davis,* 533 U.S. 678, 684-86 (2001)). Importantly, he added:

> Were there to be an unreasonable
> delay by the INS in pursuing and
> completing deportation
> proceedings, it could become
> necessary to inquire whether the
> detention is not to facilitate
> deportation, or to protect against
> risk of flight or dangerousness,
> but to incarcerate for other
> reasons.

*Id.* at 532-33 (Kennedy, J., concurring). Considering this, along with the attention the Court gave to the average length of removal cases, we concluded that the Court in *Demore* expected the detentions under section 1226(c) to be brief, and that this expectation was key to their conclusion that the law complied with due process. *Diop,* 656 F.3d at 233-34 (citing *Demore*, 538 U.S. at 529). For all of these reasons, we said:

11

"[T]he constitutionality of this practice is a function of the length of the detention. . . . [T]he constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds." *Diop*, 656 F.3d at 232, 234.

By its very nature, the use of a balancing framework makes any determination on reasonableness highly fact-specific.[7] In circumstances like those in *Demore*, it is not

---

[7] Chavez-Alvarez and the American Civil Liberties Union as amicus urge us to adopt a rebuttable presumption that all pre-removal detentions exceeding six months must be justified by the government at a bond hearing. *See* Appellant's Br. at 24 ("[T]his Court has thus far declined to declare that all pre-removal detentions exceeding six months must be justified by the Government at a bond hearing . . . . Such a rule would provide much-needed guidance to the district courts and ease the burden on detained noncitizens - most of whom cannot afford to retain counsel to pursue a habeas petition." (internal quotation marks and citations omitted)); ACLU Br. at 14 ("[T]he surest and simplest way to clarify the reasonableness standard is for the Court to establish a presumptively reasonable period, preferably six months, for which mandatory detention is authorized under § 1226(c), and after which a bond hearing before the [Immigration Judge] would usually be required."). We declined to adopt presumptive thresholds in both *Diop* and *Leslie*, and we decline to do so now. While we appreciate the merits of the presumption urged by Chavez-Alvarez and the ACLU, the highly fact-specific nature of our balancing framework does not comport with a bright-line rule.

arbitrary or capricious to use a presumption that the alien will flee or be dangerous in the case of every detainee for the purpose of eliminating the need for bond hearings, because the cost of their short-term deprivation of liberty is outweighed by the need or benefit of detaining this whole group to achieve the goals of the statute. The relative weight of the competing interests in cases like these favor the Government's position. Yet, due process requires us to recognize that, at a certain point—which may differ case by case[8]—the burden to an alien's liberty outweighs a mere presumption that the alien will flee and/or is dangerous. At this tipping point, the Government can no longer defend the detention against claims that it is arbitrary or capricious by presuming flight and dangerousness: more is needed to justify the detention as necessary to achieve the goals of the statute. As we said in *Diop*, section 1226(c) "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." *Id.* at 231. In Diop's case, we weighed the goals of the statute against the personal costs to his liberty resulting from his detention of roughly two years, eleven months, and concluded that Diop's detention was unconstitutional. *Id.*

In *Diop*, however, our balancing also took into account our finding that the Government was responsible for creating unreasonable delays. *Id.* at 234. In contrast, Chavez-Alvarez does not accuse the Government of creating unreasonable delays. He attributes the length of his case to complex issues.

---

[8]*Diop,* 656 F.3d at 234.

13

The Government uses Chavez-Alvarez's position to defend the reasonableness of the detention here, pointing to our statement in *Diop* that every case is unique and requires different amounts of time. *See id*. Building on this idea, the Government says where its handling of the case is reasonable, and the length of the case is due mostly to issues raised by the alien, we have no authority to rule that the length of the detention is unreasonable.

The flaw in the Government's argument is that it too closely ties the reasonableness of the detention to the way it acted during the removal process. The primary point of reference for justifying the alien's confinement must be whether the civil detention is necessary to achieve the statute's goals: ensuring participation in the removal process, and protecting the community from the danger that he or she poses. *See Demore*, 538 U.S. at 528. Therefore, it is possible that a detention may be unreasonable even though the Government has handled the removal case in a reasonable way. *Diop*, 656 F.3d at 223 ("[I]ndividual actions by various actors in the immigration system, each of which takes only a reasonable amount of time to accomplish, can nevertheless result in the detention of a removable alien for an unreasonable, and ultimately unconstitutional, period of time.").

The Government next wants us to judge the reasonableness of the detention based upon Chavez-Alvarez's handling of the case. It argues that Chavez-Alvarez created the circumstances that resulted in his long detention and he is not, therefore, deserving of any relief. It takes care, however, to alter its position from the one it took in a case we decided in 2012. *Leslie*, 678 F.3d 265. There, it asserted—

14

unsuccessfully—that the petitioner's decision to appeal his removal order was the reason for a lengthy detention, undermining his claim that the detention was unconstitutional. We granted Leslie's petition, ruling that the Government's position would '"effectively punish [Leslie] for pursuing applicable legal remedies.'" *Id.* at 271 (alteration in original) (quoting *Oyedeji v. Ashcroft,* 332 F. Supp.2d 747, 753 (M.D. Pa.2004)). In this case, the Government acknowledges that Chavez-Alvarez raised complicated issues that required time to argue and decide, but it wants us to focus on the fact that, thus far, his challenge has been unsuccessful. It argues that Chavez-Alvarez has been merely delaying his inevitable removal.

Although, as we will explain, we are not persuaded that Chavez-Alvarez's case is little more than a delay tactic, we get the point that the Government is trying to make: certain cases might be distinguishable from our holding in *Leslie.* An argument could be made that aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute.[9] Requiring a bond hearing in such cases might return us to the very situation that Congress was trying to fix.

Because we conclude that Chavez-Alvarez did not act in bad faith, we do not need to decide here whether an alien's delay tactics should preclude a bond hearing. However, the

---

[9] We note that we referred to Leslie's challenges as bona fide, leaving the door open to this distinction. *Leslie*, 678 F.3d at 271.

15

Government's argument requires us to consider how we are to distinguish arguments made in good faith from those that are not. The issue of good faith is necessarily decided on the individual circumstances, but the analysis is more complex than the method posed by the Government: counting wins and losses. The most important consideration for us is whether an alien challenges aspects of the Government's case that present real issues, for example: a genuine factual dispute; poor legal reasoning; reliance on a contested legal theory; or the presence of a new legal issue. Where questions are legitimately raised, the wisdom of our ruling in *Leslie* is plainly relevant: we cannot "effectively punish" these aliens for choosing to exercise their legal right to challenge the Government's case against them by rendering "the corresponding increase in time of detention [as] reasonable." *Leslie*, 678 F.3d at 271.

The case for Chavez-Alvarez's removal is grounded in his crimes that happened many years before Immigration and Customs Enforcement detained him. Before the Immigration Judge, Chavez-Alvarez questioned whether the Government correctly alleged that he was convicted of an aggravated felony under 8 U.S.C. §1101(a)(43)(F). This, in turn, made it necessary to study whether the Manual for Courts Marshal had the effect of law. He later argued that he was eligible for a 212(h) waiver, and this created a number of unique questions centering on the issue of whether Chavez-Alvarez has been legally admitted to the country for purposes of the waiver. We cannot find any evidence that Chavez-Alvarez raised any of these issues, nor requested any continuance, for the purpose of delay. As everyone agrees, the legal questions were complex and unusual, and there is no evidence in the record that the Immigration Judge viewed Chavez-Alvarez as

stalling or wasting the court's time with frivolous arguments. In fact, the Immigration Judge said the following before issuing the removal order:

> Ms. Burch, I want to thank you and also Mr. Shagin, as well as the Government for the arguments that each of you have made. They have been very learned and they have referenced some decisions that actually haven't been used in a number of years, so I'm grateful to you for your willingness to argue the points both orally and in writing by both parties.

Supp. App. 234. We are confident that Chavez-Alvarez raised a good faith challenge to the Government's case to remove him.[10] For this reason, our decision in *Leslie* controls the outcome here. Chavez-Alvarez undoubtedly is responsible for choosing to challenge his removal by raising complicated issues that have taken a lot of time to argue and decide, but this does not undermine his ability to claim that his detention is unreasonable.

For these reasons, we reject the Government's general position that the conduct of either party here dictates a

---

[10] This same confidence extends to the appeals he raised before the BIA and this Court. We make no comment on the merits of his appeal, but we do see the issues as worthy of appeal.

conclusion that the detention is reasonable. However, as we will explain, the reasonableness of the Government's conduct, and the bona fides of Chavez-Alvarez's challenge did matter when we began to weigh the various aspects of this case to determine whether, and when, a tipping point had been reached on the reasonableness of this detention.[11]

We are confident that much, if not all, of Chavez-Alvarez's detention during the proceedings before the Immigration Judge was '"reasonably necessary to secure [Chavez-Alvarez's] removal.'" *Diop*, 656 F.3d at 234 (quoting *Zadvydas*, 533 U.S. at 699). The record shows that the Immigration Judge scheduled hearings promptly to examine issues relating both to Chavez-Alvarez's removal and his waiver; neither the Government nor Chavez-Alvarez caused any extraordinary delays during this time; and the parties were acting in good faith. Therefore, after the detention went beyond the length considered by the Court in *Demore*—six months—the overall progress of the case still provided the Government with a credible argument that the resolution of all the issues was reasonably within reach,

---

[11] We said earlier that the total number of days that Chavez-Alvarez has been detained, of itself, gives us reason for pause. Even at the time the District Court made its decision, when Chavez-Alvarez had been detained for over a year and a half, we would have been hard-pressed to conclude that such a detention is reasonable. But, for the sake of providing clear guidance to the Attorney General, the Immigration Court and the District Court, we want to specify more closely when the shift in balance occurred between the benefits of using detentions based upon presumptions to achieve the statutory goals and the burdens to Chavez-Alvarez's liberty.

neutralizing any concerns that the detention was no longer limited or brief. The balance of interests at that point still favored the Government's position that the detention was reasonably necessary. However, for many of the same reasons we are convinced that, over the six months that followed, the balance of interests at stake tipped in favor of Chavez-Alvarez's liberty interests.

By the time the Immigration Judge issued his final order, the length of Chavez-Alvarez's detention was, as we alluded above, straining any common-sense definition of a limited or brief civil detention. Additionally, having held Chavez-Alvarez for this amount of time, the Government had, by then, enough exposure to Chavez-Alvarez, and sufficient time to examine information about him to assess whether he truly posed a flight risk or presented any danger to the community. Therefore, reviewing Chavez-Alvarez's detention would not have put the Government in a disadvantaged position to make its case.[12] Finally, we have little doubt that the parties had, by then, a good understanding of the credibility and complexity of Chavez-Alvarez's case. Because of this, they could have reasonably predicted that Chavez-Alvarez's appeal would take a substantial amount of time, making his already lengthy detention considerably longer. We are aware that the Government filed a motion for summary affirmance. This might have left the Government with at least some basis to justify a continued reliance on presumptions of flight and danger. But, certainly at the one-

---

[12] We read 8 C.F.R. § 1003.19(c) as giving the Immigration Judge jurisdiction to rule on the bond issue even though Chavez-Alvarez filed an appeal to the BIA.

year mark for Chavez-Alvarez's detention, we are convinced that any ground for credibly claiming that a final resolution was reasonably within reach would have vanished.

We have another concern as well. As the Supreme Court said in *Zadvydas* regarding 8 U.S.C. § 1231(a)(6), dealing with post-removal order detention: "The proceedings at issue here are civil, not criminal, and we assume that they are nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Yet, we cannot ignore the conditions of confinement. Chavez-Alvarez is being held in detention at the York County Prison with those serving terms of imprisonment as a penalty for their crimes. Among our concerns about deprivations to liberties brought about by section 1226(c) is the reality that merely calling a confinement "civil detention" does not, of itself, meaningfully differentiate it from penal measures. *Kansas v. Hendricks,* 521 U.S. 346, 361 (1997); *see also Application of Gault*, 387 U.S. 1, 27 (1967). As the length of the detention grows, the weight given to this aspect of his detention increases.

For all of these reasons, we are convinced that, beginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time Chavez-Alvarez had been detained for one year, the burdens to Chavez-Alvarez's liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute. We conclude that the underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that Chavez-Alvarez's continued

20

detention was or is necessary.[13] We will reverse the District Court's order, and remand with instruction to enter an order granting the writ of habeas corpus and ensure that Chavez-Alvarez is afforded, within ten days of the entry of this order, a hearing to determine whether, on evidence particular to Chavez-Alvarez, it is necessary to continue to detain him to achieve the goals of the statute.

---

[13] To the extent that it relevant, any additional burden given to the Government here in this individual case is outweighed by the general interest in our society of protecting against an arbitrary deprivation of liberty.