**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2663
_____

JOSE MIGUEL GERMAN SANTOS,
                                                    Appellant

v.

WARDEN PIKE COUNTY CORRECTIONAL FACILITY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:18-cv-01553)
District Judge: Honorable Sylvia H. Rambo
_____

Argued: May 21, 2020

Before: McKEE, BIBAS, and NYGAARD, *Circuit Judges*

(Filed: July 7, 2020)
_____

Jonah B. Eaton
Rebecca Hufstader            [ARGUED]
Nationalities Service Center
1216 Arch Street, 4th Floor
Philadelphia, PA 19107

    *Counsel for Appellant*

Sarah S. Wilson            [ARGUED]
United States Department of Justice
Office of Immigration Litigation
1801 4th Avenue North
Birmingham, AL 35203

Allison Frayer
Catherine Reno
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868
Ben Franklin Station
Washington, DC 20044

    *Counsel for Appellee*

Celso J. Perez            [ARGUED]
Michael K.T. Tan
American Civil Liberties Union
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004

Vanessa Stine
American Civil Liberties Union of Pennsylvania
P.O. Box 60173

Philadelphia, PA 19102

*Counsel for Amici American Civil Liberties Union Foundation, American Civil Liberties Union of New Jersey, and American Civil Liberties Union of Pennsylvania*

Christopher R. Healy
Anthony C. Vale
Pepper Hamilton
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103

*Counsel for Amici American Immigration Lawyers Association, Federal Litigation and Appeals Clinic at Drexel University Thomas Kline School of Law, Immigration Defense Project, Rapid Defense Network, and American Friends Service*

Sarah H. Paoletti
University of Pennsylvania School of Law
Transnational Legal Clinic
3501 Sansom Street
Philadelphia, PA 19104

*Counsel for Amicus International Law Professors and Human Rights Clinicians*

---

## OPINION OF THE COURT

---

BIBAS, *Circuit Judge*.

Under 8 U.S.C. § 1226(c), the Government must detain certain criminal aliens pending their removal proceedings, even if they were lawfully present in the United States. Jose German Santos, a lawful permanent resident, was detained under that statute and has now been imprisoned for more than two-and-a-half years. Because his detention has become unreasonable, he has a due process right to a bond hearing, at which the Government must justify his continued detention by clear and convincing evidence. We will thus reverse and remand.

## I. BACKGROUND

### A. German Santos's arrest and detention

German Santos, a native of the Dominican Republic, became a lawful permanent resident of the United States in 2006. In late 2017, he pleaded guilty in Pennsylvania state court to possessing marijuana with intent to deliver it. If that crime is an "aggravated felony" under immigration law, then he is removable. 8 U.S.C. § 1227(a)(2)(A)(iii). And immigration law defines "illicit trafficking in a controlled substance" as such a crime. *Id.* § 1101(a)(43)(B).

So in December 2017, immigration officials arrested German Santos. They took him to the Pike County Correctional Facility to await a decision in his removal proceedings. They

4

did so under 8 U.S.C. § 1226(c), which requires the Government to detain aliens convicted of certain crimes while they await decisions in their removal proceedings. And though another statutory provision lets aliens be released on bond while awaiting a removal decision, § 1226(c) does not. *Compare id.* § 1226(a)(2) (allowing bond and conditional parole), *with id.* § 1226(c)(2) (allowing release of detained aliens only in limited circumstances).

## B. Removal proceedings

In June 2018, an immigration judge ordered German Santos removed. The immigration judge found that his conviction was an aggravated felony and denied his requests for relief from removal.

German Santos timely appealed. Because he did not pay the filing fee at first, the Board of Immigration Appeals rejected his appeal. Nine days later, he refiled. The Board considered the merits and affirmed, finding that German Santos had committed an aggravated felony and thus was ineligible for cancellation of removal. *See* 8 U.S.C. § 1229b(a)(3).

When German Santos petitioned this Court for review, the Government moved to remand. The Government asked us to let the Board reconsider its application of the modified categorical approach in finding that his conviction was an aggravated felony. We did so.

## C. Habeas petition

While awaiting the Board's decision on remand, German Santos filed this federal habeas petition under 28 U.S.C.

5

§2241. By then, he had been detained at the prison for eight months. He invoked two of our precedents, in which we had held that the Fifth Amendment's Due Process Clause guarantees a bond hearing to an alien detained under §1226(c) once his detention becomes "unreasonable." *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 474–75 (3d Cir. 2015); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011). Under those decisions, he argued, he was entitled to a bond hearing.

The District Court disagreed. It explained that the Supreme Court's 2018 decision in *Jennings v. Rodriguez* had abrogated *Diop* and *Chavez-Alvarez*. *German Santos v. Lowe*, No. 1:18-cv-01553, 2019 WL 1468313, at *3 (M.D. Pa. Apr. 3, 2019) (analyzing *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)). *Jennings* rejected the argument that the text of §1226(c) limited detention. *See* 138 S. Ct. at 846–47. Thus, the District Court reasoned, our precedents did not entitle German Santos to a bond hearing. 2019 WL 1468313, at *3.

Still, the court recognized that *Jennings* had not reached the merits of the constitutional challenge to prolonged detention without a bond hearing under §1226(c). *Id.*; *Jennings*, 138 S. Ct. at 838–39. So it construed German Santos's claim as an as-applied challenge to §1226(c) and looked to *Diop*'s and *Chavez-Alvarez*'s constitutional analyses for guidance. 2019 WL 1468313, at *3–4.

Under those cases, the court explained, German Santos's detention without a bond hearing (then fifteen months long) was constitutional. 2019 WL 1468313, at *4. It found no evidence that the Government had "improperly or unreasonably

6

delayed the regular course of proceedings, or that [it] ha[d] detained him for any purpose other than the resolution of his removal proceedings." *Id.* (internal quotation marks omitted). It thus denied his habeas petition. German Santos timely appealed.

Shortly before we heard oral argument, the Board issued its decision on remand. Changing course, it held that German Santos's conviction was not an aggravated felony. It then remanded to the immigration judge for a hearing on his application for cancellation of removal. Eventually, the immigration judge denied that application, leaving German Santos in prison. As of today, he has been detained for two years and seven months without a bond hearing.

### D. This appeal

On appeal of the denial of his habeas petition, German Santos first argues that *Jennings* did not abrogate *Diop*'s and *Chavez-Alvarez*'s constitutional analyses. Under those cases, he argues, his detention has grown unreasonable for three reasons: (1) it has spanned more than two years, (2) his removal proceedings are likely to continue for many more months, and (3) the Board and immigration judge's repeated legal errors delayed the proceedings by prompting an appeal and a petition for review. To remedy this alleged due-process violation, he asks for a bond hearing at which the Government must justify his continued detention under § 1226(c) by clear and convincing evidence.

The Government disagrees. It says that the District Court correctly held that *Jennings* abrogated *Diop* and *Chavez-Alvarez*. But like the District Court, it recognizes that in some cases, an alien detained under § 1226(c) can bring an as-applied challenge to his detention. Still, it argues, German Santos's as-applied challenge fails because: (1) he delayed the proceedings by appealing and pursuing relief from removal, (2) he has no right to discretionary cancellation of removal, and (3) his detention, even if prolonged, still serves a legitimate purpose.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 2241, and we do under § 1291. Because the District Court did not conduct an evidentiary hearing, we review its denial of the habeas petition de novo. *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 183 (3d Cir. 2017).

## II. ALIENS CAN BRING AS-APPLIED CHALLENGES TO THEIR DETENTION UNDER 8 U.S.C. § 1226(C)

Before addressing German Santos's challenge, we must clarify some confusion about the limits on detention under § 1226(c) and where those limits come from. Faced with as-applied challenges under that provision, we have held that the Due Process Clause limits detention without a bond hearing to a "reasonable" period. *Chavez-Alvarez*, 783 F.3d at 474–75; *Diop*, 656 F.3d at 233. But in those cases, we also invoked the constitutional-avoidance canon to construe the statute as limiting detention without a bond hearing. *Chavez-Alvarez*, 783 F.3d at 475; *Diop*, 656 F.3d at 231. So after the Supreme Court held in *Jennings* that § 1226(c) does not limit the length of detention, district courts in this Circuit have disagreed about

whether aliens can still bring as-applied challenges to their detention under that statute. *See* 138 S. Ct. at 846.

We hold that they can. Though *Jennings* abrogated our construction of the statute as implicitly limiting detention without a bond hearing, it left our framework for as-applied constitutional challenges intact.

## A. The Due Process Clause limits detention under 8 U.S.C. § 1226(c)

To understand our case law on § 1226(c), we must start with the decision driving those cases: *Demore v. Kim*, 538 U.S. 510 (2003). There, the Supreme Court rejected a *facial* challenge to the statute's requirement of detention without a bond hearing. *Id.* at 531. The Court did so because it understood that the detention would last only for a "very limited time." *Id.* at 529 n.12. Relying on the Government's representations, the Court explained that detention "under § 1226(c) lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530.

In his concurrence, Justice Kennedy extended the majority's logic to *as-applied* challenges. He noted that due process bars the Government from depriving people of liberty arbitrarily. *Demore*, 538 U.S. at 532 (Kennedy, J., concurring). So once "continued detention be[comes] unreasonable or unjustified," he reasoned, "a lawful permanent resident alien" could be "entitled to an individualized determination as to his risk of flight and dangerousness." *Id.* Because he read the majority's

discussion of the facial challenge as consistent with that premise, he cast the fifth vote. *Id.* at 533.

Eight years later, in *Diop*, we faced an as-applied challenge to detention under § 1226(c). There, we distilled the following rule from *Demore*: Though the Government must detain aliens convicted of certain crimes at the start of their removal proceedings, "the constitutionality of this practice is a function of the length of the detention." *Diop*, 656 F.3d at 232. "At a certain point," we explained, "continued detention becomes unreasonable and … unconstitutional unless the Government has justified its actions at a hearing." *Id.*

We later explained in *Chavez-Alvarez* why the constitutionality of detention under § 1226(c) depends on its length. When an alien is first detained, we can presume that detention is needed to prevent flight or danger to the community. *Chavez-Alvarez*, 783 F.3d at 474. The benefit of detaining these aliens as a class outweighs their "short-term deprivation of liberty." *Id.* Eventually, though, that burden "outweighs a mere presumption that the alien will flee" or pose a danger. *Id.* at 474–75. "At this tipping point," we said, due process requires the Government to justify continued detention at a bond hearing. *Id.* at 475, 478.

Though *Diop* and *Chavez-Alvarez* decided that due process restricts detention under § 1226(c), both cases also invoked the constitutional-avoidance canon. In *Diop*, we relied on this canon to hold that § 1226(c) "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes." 656 F.3d at 231.

10

We repeated this same sentence in *Chavez-Alvarez*. 783 F.3d at 475 (quoting *Diop*, 656 F.3d at 231).

Thus, when the Supreme Court later held that § 1226(c) on its face does not limit detention, confusion arose about whether aliens lawfully present can still bring as-applied challenges to their detention. We now hold that they can.

**B. *Jennings* did not foreclose as-applied constitutional challenges to detention under § 1226(c)**

The Supreme Court clarified the scope of the Government's authority to detain aliens under § 1226(c) in *Jennings*. There, the Court rejected the Ninth Circuit's use of the constitutional-doubt canon to construe § 1226(c) as implicitly limiting detention without a bond hearing. *Jennings*, 138 S. Ct. at 842, 846. Instead, the Court held, "§ 1226(c) does not on its face limit the length of the detention it authorizes." *Id.* at 846. In so holding, *Jennings* abrogated our earlier reliance on the constitutional-avoidance canon to read § 1226(c) as providing a right to a bond hearing. *See Chavez-Alvarez*, 783 F.3d at 475; *Diop*, 656 F.3d at 231.

But even though the Court foreclosed reading the statutory text as guaranteeing periodic bond hearings, it reserved the aliens' constitutional claims for remand. *Jennings*, 138 S. Ct. at 851. One of those claims was that due process forbids prolonged confinement under § 1226(c) without a bond hearing. Respondents' Br. 17–32, *Jennings*, 138 S. Ct. 830 (No. 15-1204), 2016 WL 6123731. *Jennings* thus left our framework for assessing as-applied constitutional challenges intact. In holding otherwise, the District Court erred.

11

The Government makes two arguments to the contrary, but neither is persuasive. First, it reads our pre-*Jennings* precedent as rooted solely in the statutory text. While it concedes that *Diop* addressed "the constitutionality of § 1226(c)," it says that *Diop* did so only in construing the statute. Appellee's Br. 20.

True, *Diop* and *Chavez-Alvarez* could have simply noted the constitutional questions, invoked the constitutional-doubt canon, and decided the cases on pure statutory grounds. But they went further. The cases answered the constitutional questions, concluding that § 1226(c) would be invalid unless we read it to guarantee a bond hearing once detention becomes unreasonable. So the cases chose the saving construction. That was not dictum, but part of the reasoning.

And while *Jennings* rejected that construction as a reading of the text, it did not touch the constitutional analysis that led *Diop* and *Chavez-Alvarez* to their reading. That analysis stands. We are thus bound by *Diop* and *Chavez-Alvarez*'s decision that § 1226(c) is unconstitutional when applied to detain an alien unreasonably long without a bond hearing. *See Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) (recognizing that *Diop* had a constitutional holding); *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 222 n.11 (3d Cir. 2018) (same).

The Government also points to a recent Sixth Circuit decision holding that *Jennings* fully abrogated one of its earlier § 1226(c) cases. But unlike *Diop* and *Chavez-Alvarez*, the Sixth Circuit's pre-*Jennings* precedent had relied solely on constitutional avoidance, choosing not to confront the due process question. *See Ly v. Hansen*, 351 F.3d 263, 267, 270 (6th Cir.

2003) ("constru[ing]" § 1226(c) as limiting detention to "save[ ] the statute from constitutional challenge"). Thus, as that court later recognized, "*Ly* did not survive *Jennings*" because it had "turned on a constitutional avoidance reading of § 1226(c), one that *Jennings* expressly foreclosed." *Hamama v. Adducci*, 946 F.3d 875, 879–80 (6th Cir. 2020). While *Ly* had avoided the constitutional issue, our pre-*Jennings* precedents confronted and resolved it. *Chavez-Alvarez*, 783 F.3d at 474–75; *Diop*, 656 F.3d at 232.

In sum, even after *Jennings*, an alien lawfully present but detained under § 1226(c) can still challenge his detention under the Due Process Clause. That is exactly what German Santos did here.

### III. DUE PROCESS AFFORDS ALIENS DETAINED UNDER § 1226(C) A BOND HEARING ONCE DETENTION BECOMES UNREASONABLE

As our constitutional analyses in *Diop* and *Chavez-Alvarez* are still good law, those cases govern as-applied challenges under § 1226(c). There, we held that "when detention becomes unreasonable, the Due Process Clause demands a hearing." *Diop*, 656 F.3d at 233; *accord Chavez-Alvarez*, 783 F.3d at 474–75. Reasonableness is a "highly fact-specific" inquiry. *Chavez-Alvarez*, 783 F.3d at 474. Together, *Diop* and *Chavez-Alvarez* give us a nonexhaustive list of four factors to consider in assessing whether an alien's detention has grown unreasonable.

The most important factor is the duration of detention. *See Chavez-Alvarez*, 783 F.3d at 475–78; *Diop*, 656 F.3d at 233–

34. We begin there because the Supreme Court in *Demore* rejected a facial challenge to §1226(c) based on the Government's representation that detention lasts between one-and-a-half and five months. 538 U.S. at 529–30. Extending *Demore*'s logic to as-applied challenges, we explained that detention "becomes more and more suspect" after five months. *Diop*, 656 F.3d at 234. In *Diop*, we held that the two-year-and-eleven-month detention of an alien who had been granted withholding of removal was unreasonable. *Id.* at 233–34. And in *Chavez-Alvarez*, we held that a lawful permanent resident's detention became unreasonable sometime between six months and one year. 783 F.3d at 478; *accord Leslie v. Att'y Gen. of the U.S.*, 678 F.3d 265, 271 (3d Cir. 2012) (requiring a bond hearing for a lawful permanent resident who had been detained for four years).

To be sure, we do not read *Demore*, *Diop*, and *Chavez-Alvarez* as setting a bright-line threshold at five months, six months, or one year. On the contrary, we explicitly declined to adopt a presumption of reasonableness or unreasonableness of any duration. *Chavez-Alvarez*, 783 F.3d at 475 n.7; *Diop*, 656 F.3d at 234. Nor will we do so here.

Instead, we evaluate duration along with all the other circumstances, including these three other factors:

***First***, we consider whether the detention is likely to continue. *See Chavez-Alvarez*, 783 F.3d at 477–78. When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable. *See id.*

14

***Second***, we look to the reasons for the delay, such as a detainee's request for continuances. *Diop*, 656 F.3d at 234; *see Demore*, 538 U.S. at 531 (upholding a "longer than the average" six-month detention because the alien had asked for a continuance). We also ask whether either party made careless or bad-faith "errors in the proceedings that cause[d] unnecessary delay." *Diop*, 656 F.3d at 234.

But we do not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings. *Chavez-Alvarez*, 783 F.3d at 476–77. Doing so, and counting this extra time as reasonable, would "effectively punish [an alien] for pursuing applicable legal remedies." *Id.* at 475 (quoting *Leslie*, 265 F.3d at 271). Nor do we hold the agency's legal errors against the Government, unless there is evidence of carelessness or bad faith. *Cf. Diop*, 656 F.3d at 234. That said, detention under § 1226(c) can still grow unreasonable even if the Government handles the removal proceedings reasonably. *See Chavez-Alvarez*, 783 F.3d at 475.

***Third***, we ask whether the alien's conditions of confinement are "meaningfully different[]" from criminal punishment. *Chavez-Alvarez*, 783 F.3d at 478. Removal proceedings are civil, not criminal. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). So if an alien's civil detention under § 1226(c) looks penal, that tilts the scales toward finding the detention unreasonable. *Chavez-Alvarez*, 783 F.3d at 478. And as the length of detention grows, so does the weight that we give this factor. *Id.*

## IV. GERMAN SANTOS'S DETENTION UNDER §1226(C) IS UNREASONABLE

With this framework to guide us, we now turn to assessing German Santos's detention. Given its length, likelihood of continuing, and conditions, it has become unreasonable.

### A. Duration

German Santos's detention is already more than two-and-a-half years long. It is five times longer than the six months that *Demore* upheld as only "somewhat longer than the average." 538 U.S. at 530–31. It is more than double the six-month-to-one-year period that triggered a bond hearing in *Chavez-Alvarez*. 783 F.3d at 477. And it is approaching the thirty-five-month detention that we found unreasonable in *Diop*. 656 F.3d at 226, 235. The length thus weighs strongly in German Santos's favor.

### B. Likelihood of continued detention

German Santos is also likely to stay detained for some time. Shortly after oral argument in this appeal, an immigration judge denied his application for cancellation of removal. He reserved his right to appeal to the Board and has thirty days to do so. This means he will stay in prison as long as it takes the Board to issue its decision. As with his first two appeals, that could take months. And if the Board dismisses his appeal, he may petition this Court for review. 8 U.S.C. § 1252(a)(5). That too would add months more in prison. So the likelihood that his detention will continue strongly supports a finding of unreasonableness.

## C. Reasons for the delay

The reasons for the delay do not cut one way or the other. German Santos claims that the immigration judge and Board delayed the proceedings by making "repeated legal errors." Appellant's Br. 27. The agency, he says, erred in applying the modified categorical approach and treating his underlying conviction as an aggravated felony.

True, the Government moved to remand to let the Board reconsider that issue, and eventually the Board changed its mind. But these alleged errors are not the kind of careless or bad-faith mishaps that we hold against the Government. Take *Diop*. In that case, we found unnecessary delay based on two facts: First, the immigration judge repeatedly issued decisions that were so unclear that they required remands for clarification. *Diop*, 656 F.3d at 224–25. Second, the Government was slow to produce evidence relevant to whether Diop was properly detained. *Id.* at 234. Nothing like that happened here. Absent carelessness or bad faith, we will not scrutinize the merits of immigration proceedings and blame whichever party has the weaker hand. "No system of justice can be error-free, and those errors require time to fix." *Id.*

By the same token, we will not hold German Santos's appeals and applications for discretionary relief against him either. *See Chavez-Alvarez*, 783 F.3d at 476–77. And though he delayed the proceedings by failing to pay the filing fee the first time he appealed to the Board, that lapse set him back nine days, just a drop in the bucket compared to his nine-hundred-plus-day detention. *Cf. Leslie*, 678 F.3d at 271 (discounting a five-week continuance relative to a four-year detention). Nor

did he seek any substantial continuances. So this factor does not favor either side.

## D. Conditions of confinement

Finally, "we cannot ignore the conditions of confinement." *Chavez-Alvarez*, 783 F.3d at 478. German Santos has been detained in prison alongside convicted criminals since late 2017. Despite its civil label, his detention is indistinguishable from criminal punishment. *Id.* And at oral argument, the Government represented that he is currently confined to his cell for twenty-three hours per day. Those conditions strongly favor a finding of unreasonableness.

\* \* \* \* \*

As of today, German Santos has been detained for more than two-and-a-half years. That is an unreasonably long time, and there is no end in sight. All the while, he has been in prison. Although neither side is to blame for the delay, the other three factors compel us to hold that German Santos's detention has grown unreasonable. He is thus entitled to a bond hearing to gauge whether he still needs to be detained to keep him from fleeing or committing more crimes. *See Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring); *Chavez-Alvarez*, 783 F.3d at 477–78; *Diop*, 656 F.3d at 233.

## V.  AT §1226(C) BOND HEARINGS, THE GOVERNMENT MUST JUSTIFY CONTINUED DETENTION BY CLEAR AND CONVINCING EVIDENCE

Next, we must discuss the procedures that govern the bond hearing. We have already held that the Government bears the

18

burden of proof. That burden, we now hold, is to justify detention by clear and convincing evidence.

### A. At §1226(c) bond hearings, the Government bears the burden of persuasion

The Government argues that German Santos should bear the burden of disproving his flight risk and danger to the community. But we have already decided that the Government bears the burden of justifying an alien's continued detention under §1226(c). *Diop*, 656 F.3d at 233, 235; *see Borbot*, 906 F.3d at 279 (discussing *Diop*). We are bound by this precedent.

### B. The Government must justify continued detention under §1226(c) by clear and convincing evidence

Though our precedents have placed the burden of proof on the Government, we have not yet decided what that burden entails. We now hold that once detention under §1226(c) has become unreasonable, the Government must put forth clear and convincing evidence that continued detention is necessary.

A standard of proof "serves to allocate the risk of error between the litigants" and reflects the "relative importance attached to the ultimate decision." *Addington v. Texas*, 441 U.S. 418, 423 (1979). Thus, choosing the appropriate standard of proof here requires us to balance the alien's liberty interest, the risk of error to him, and the Government's interest in detaining criminal aliens until the end of their removal proceedings. *See id.* at 425 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

When the Government seeks to take more than just money from a party, we typically hold the Government to a standard of proof higher than a preponderance of the evidence. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 741 (1987) (criminal pretrial detention); *Addington*, 441 U.S. at 432–33 (involuntary civil commitment for mental illness). In ordinary civil cases, each side has the same skin in the game. So it makes sense to allocate the risk of error evenly between the two parties. *Addington*, 441 U.S. at 423. But when someone stands to lose an interest more substantial than money, we protect that interest by holding the Government to a higher standard of proof. *Id.* at 424.

We applied this rule in a similar context: bond hearings for aliens detained under 8 U.S.C. § 1231(a)(6). Under that statute, the Government can detain certain aliens beyond the ninety-day removal period for the time "reasonably necessary to bring about that alien's removal." *Zadvydas*, 533 U.S. at 689. We have held that aliens facing "prolonged detention" under § 1231(a)(6) are entitled to a bond hearing at which the Government must justify the alien's continued detention by clear and convincing evidence. *Guerrero-Sanchez*, 905 F.3d at 224 & n.12. Because the alien's potential loss of liberty is so severe, we reasoned, he should not have to share the risk of error equally. *Id.*

Though *Guerrero-Sanchez* addressed another provision of the Immigration and Nationality Act, we find its guidance persuasive here. Whether the bond hearing occurs before or after a final order of removal, the alien stands to lose his physical freedom, even if temporarily.

20

To be sure, an alien's detention is likely to be longer under §1231(a)(6) than under §1226(c). While detention after a removal order has no built-in end date, detention before a removal order ends at the close of proceedings. *See Zadvydas*, 533 U.S. at 687; *Demore*, 538 U.S. at 527–29. So the cost of error could be lower at §1226(c) bond hearings. Even so, we see no basis for abandoning the settled rule that when a party stands to lose his liberty, even temporarily, we hold the Government to a higher burden of proof. *See Salerno*, 481 U.S. at 741. Following *Guerrero-Sanchez*'s lead, we will not depart from that rule today.

Thus, at German Santos's bond hearing, the Government bears the burden of persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community. *Chavez-Alvarez*, 783 F.3d at 477–78.

\* \* \* \* \*

German Santos has now spent more than two-and-a-half years behind bars waiting for his removal proceedings to end. And there is no end in sight. Because his detention has grown unreasonable, the Government must hold a bond hearing. To justify his continued detention, it must show, by clear and convincing evidence, that German Santos would likely flee or pose a danger to the community if released. If it cannot, it must release him. We will thus reverse and remand for the District Court to order a bond hearing within ten days of the entry of this Court's judgment. The mandate will issue at once.