# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2252
_____

Nyynkpao Banyee

*Petitioner - Appellee*

v.

Merrick B. Garland, U.S. Attorney General; Alejandro Mayorkas, Secretary, Department of Homeland Security; Tae D. Johnson, Acting Director, Immigration and Customs Enforcement; Marcos Charles, Director, St. Paul Field Office Immigration and Customs Enforcement

*Respondents - Appellants*

Eric Holien, Sheriff, Kandiyohi County

*Respondent*

----------------------------

Constitutional Accountability Center; State of Minnesota; American Immigration Council; National Immigration Project of the National Lawyers Guild; Retired Immigration Judges and Board of Immigration Appeal Members

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 15, 2024
Filed: September 17, 2024
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Nyynkpao Banyee was released after the district court determined that a year spent in custody waiting for "a decision on whether" he was "to be removed from the United States" was too long. 8 U.S.C. § 1226(a). Due process imposes no time limit on detention pending deportation, however, so we reverse.

I.

A citizen of Ivory Coast, Banyee grew up in the United States as a lawful permanent resident and began committing crimes after becoming an adult. Included among them were theft, lying to the police, and possessing marijuana and drug paraphernalia. The last straw was robbery with a dangerous weapon, which prompted federal authorities to begin deportation proceedings. *See* 8 U.S.C. § 1227(a)(2)(A)(ii)–(iii), (B)(i) (making aliens "deportable" if they commit an aggravated felony, a drug crime, or multiple crimes involving moral turpitude).

There have been numerous twists and turns since then. At first, the immigration judge agreed with the government that the robbery conviction was a "crime of violence," a type of "aggravated felony" that disqualified him from certain forms of discretionary relief. 8 U.S.C. §§ 1101(a)(43)(F), 1229b(a)(3). Doubts crept in, however, after the Supreme Court adopted a narrow reading of a provision of the Armed Career Criminal Act that uses similar wording. *See Borden v. United States*, 593 U.S. 420, 429 (2021); *see also* 18 U.S.C. § 924(e)(2)(B)(i). At that point, the government pivoted to another theory: the robbery conviction counted because it was an attempted "theft offense." 8 U.S.C. § 1101(a)(43)(G), (U). Unconvinced, the immigration judge cancelled Banyee's removal from the country. *See id.* § 1229b(a). Then came a successful government appeal, followed by a ruling that

-2-

the conviction *did* count.  Banyee, now unhappy with the latest turn, has filed an appeal that remains pending.

The entire time, Banyee was in custody because a federal statute required it. *See id.* § 1226(c)(1)(B) ("The Attorney General *shall* take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), [or] (B) . . . ." (emphasis added)); *Jennings v. Rodriguez*, 583 U.S. 281, 303–04 (2018) (explaining that aliens "who fall[] into one of [several] enumerated categories involving criminal offenses and terrorist activities" must be detained "pending removal proceedings" and "are not entitled to be released" except in "narrow[ly]" defined circumstances).  But rather than directly contesting the grounds for his mandatory detention, *see Jennings*, 583 U.S. at 289 n.1 (explaining how), he petitioned for habeas relief, *see* 28 U.S.C. § 2241.  In his view, the lengthy detention violated due process, at least in the absence of individualized review.  A magistrate judge and the district court agreed.

Using a multi-part, judge-made "reasonableness" balancing test, *see Muse v. Sessions*, 409 F. Supp. 3d 707, 715 (D. Minn. 2018),[1] the district court ordered the immigration judge to hold a bond hearing.  By that point, Banyee had already spent a year in a county jail.  With "no imminent end in sight," the court thought his detention too closely resembled criminal incarceration, even though neither side had been "dilatory" in litigating the case.

The bond hearing came with conditions.  The first was that it had to occur within 30 days.  The second was that the burden fell on the government to prove, by clear-and-convincing evidence, that Banyee was dangerous or posed a flight risk.  The immigration judge held the court-ordered hearing, determined that the

---

[1]The *Muse* factors include how long an alien has been detained, how much longer the detention could last, whether the confinement resembles criminal incarceration, who is to blame for any delays, and how likely it is that an alien will eventually be deported.  *See Muse*, 409 F. Supp. 3d at 716–18.

government had not met its burden, and released him on bond.[2]  Although the government challenges the individual steps that led to his release, we must also decide whether the year-long detention violated his rights in the first place.  *See Grove v. Fed. Bureau of Prisons*, 245 F.3d 743, 746 (8th Cir. 2001) ("apply[ing] de novo review to a question of law in a § 2241 habeas appeal").

## II.

The answer is no.  The rule has been clear for decades: "[d]etention during deportation proceedings [i]s . . . constitutionally valid."  *Demore v. Kim*, 538 U.S. 510, 523 (2003).

## A.

In *Demore*, the Supreme Court considered a due-process challenge to the same mandatory-detention provision at issue here.  *See* 538 U.S. at 514; 8 U.S.C. § 1226(c).  It reaffirmed its "longstanding view that the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."  *Demore*, 538 U.S. at 526.  The reason, according to the Court, was that "Congress may make rules as to aliens that would be unacceptable if applied to citizens."  *Id.* at 522; *accord Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976).  In other words, the government has more flexibility when dealing with immigration.  *See, e.g.*, *United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010) (explaining that the "constitutional[] valid[ity]" of detention pending deportation means that the usual limits on *Terry* stops "do[] not apply to . . . administrative arrest[s] based upon probable cause that an alien is deportable"); *see also Wong Wing v. United States*, 163 U.S. 228, 235 (1896) (explaining that the power to deport "would be vain if those accused could not be held in custody pending

---

[2]We grant Banyee's motion to supplement the record with additional materials from his administrative proceedings.

[an] inquiry into their true character and while arrangements were being made for their deportation").

It is not as if *Demore* broke new ground. Half a century earlier, the Supreme Court upheld detention without bond for deportable aliens who were active Communists. *See Carlson v. Landon*, 342 U.S. 524, 541–42 (1952) (holding that their "support[] [for] . . . the Party's philosophy concerning violence g[ave] adequate ground for detention"). Just as in *Demore*, no individualized findings of dangerousness or flight risk were necessary. *See id.* (refusing to require the government "to show specific acts of sabotage or incitement"); *see also Demore*, 538 U.S. at 524 (emphasizing that "the aliens in *Carlson* were not flight risks" and "had *not* been found individually dangerous"). The government could continue to hold the detainees simply "by reference to the legislative scheme." *Carlson*, 342 U.S. at 543.

The Court reached the same conclusion in *Reno v. Flores*, which involved a "'blanket' presumption" that resulted in minors remaining in custody during their deportation proceedings. 507 U.S. 292, 313 (1993); *see id.* at 297–98 (describing the regulatory scheme, which generally required minors to remain in custody if their parents were in detention or otherwise unavailable to take care of them). The Court pointed out that "institutional custody," even by virtue of "reasonable presumptions and generic rules," was "*surely*" constitutional for those "who are aliens." *Id.* at 305 (emphasis added); *see id.* at 306 (noting that no one disputed the government's "authority to detain aliens suspected of entering the country illegally pending their deportation hearings"). The overall point, as *Demore* recognized, is that "[d]etention during removal proceedings is a constitutionally permissible part of th[e] process." 538 U.S. at 531 (citing *Wong Wing*, *Carlson*, and *Flores*). And historically speaking, it always has been. *See id.* at 526; *Wong Wing*, 163 U.S. at 237.

It is true, as Banyee emphasizes, that the Court has described detention pending deportation as "brief," "limited," and "short[]." *Demore*, 538 U.S. at 513, 523, 526, 528–29, 531. But nothing suggests that length determines legality. To the contrary, what matters is that detention pending deportation "ha[s] a definite termination point"—deporting or releasing the alien—making it "materially different" from the "potentially permanent" confinement authorized by other statutes. *Id.* at 528–29 (citation omitted); *see Zadvydas v. Davis*, 533 U.S. 678, 697 (2001) (drawing the same definite-versus-indefinite distinction); *cf. Borrero v. Aljets*, 325 F.3d 1003, 1008 (8th Cir. 2003) (holding that even indefinite detention can be constitutional for "alien[s] who [are] stopped at the border"). The *why*, in other words, is more important than *how long*.[3] *See Zadvydas*, 533 U.S. at 693–94 (noting that "the nature of th[e] protection" to which aliens are entitled "var[ies] depending upon *status and circumstance*" (emphasis added)).

This distinction goes back more than a century. For example, the Supreme Court has been clear that delaying deportation to lock up and punish aliens who have not committed a crime is unconstitutional. *See Wong Wing*, 163 U.S. at 235, 237 (holding that Congress could not subject "person[s] of Chinese descent" to up to a year of "imprison[ment] at hard labor" before their "remov[al] from the United States" (quoting Act of May 5, 1892, § 4, 27 Stat. 25, 25)); *see also id.* at 235 (distinguishing it from "detention . . . necessary to . . . [the] expulsion of aliens," which is "clear[ly] . . . valid"). And it has suggested that keeping aliens locked up when deportation is only "a remote possibility" would also pose a constitutional

---

[3]Multiple courts have suggested that "unreasonably prolonged" detention poses a due-process problem. *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024); *see Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021); *German Santos v. Warden Pike Cnty. Corr. Fac.*, 965 F.3d 203, 210 (3d Cir. 2020). But those are the courts (among others) that had invoked the same due-process concerns to read an "implicit reasonable time limitation" into the statute itself, *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1212–13 (11th Cir. 2016) (quoting *Zadvydas*, 533 U.S. at 682) (collecting cases), until the Supreme Court pointed out that § 1226(c)'s "clearer [than clear]" text foreclosed it, *Jennings*, 583 U.S. at 303.

problem. *Zadvydas*, 533 U.S. at 690; *see also Demore*, 538 U.S. at 527 (acknowledging that "detention . . . d[oes] not serve its purported immigration purpose" when deportation is no longer an option); *id.* at 532–33 (Kennedy, J., concurring) (explaining that "unreasonable delay" can show an alien is being held "for other reasons" besides "facilitat[ing] deportation"). But not, as in this case, when deportation is still on the table. *See id.* at 526 (majority opinion).

These cases leave no room for a multi-factor "reasonableness" test. It is true, as Banyee has pointed out, that deciding what process is due ordinarily requires a form of interest balancing. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). But *Zadvydas* and *Demore* have already done whatever balancing is necessary. *See, e.g.*, *Zadvydas*, 533 U.S. at 682, 701 (linking a "'reasonable time' limitation" to "the likelihood of removal in the reasonably foreseeable future"); *Demore*, 538 U.S. at 528 (explaining that, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means," so it is sufficient if "detention necessarily serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings"). Indeed, the lead *dissent* in *Demore* advocated for the type of "individual determination" Banyee now seeks, presumably under a *Mathews*-type inquiry. 538 U.S. at 549–58, 561 n.16 (Souter, J., concurring in part and dissenting in part); *cf. Flores*, 507 U.S. at 314 n.9 (rejecting *another* dissent's call for "fully individualized custody determinations"). The majority opted for a bright-line rule instead: the government can detain an alien for as long as deportation proceedings are still "*pending*." *Demore*, 538 U.S. at 527 (majority opinion).

## B.

For Banyee, they are. Recall that he is waiting for a decision on *his* appeal after the immigration judge treated his robbery-with-a-dangerous-weapon

conviction as an "aggravated felony."[4]  *See Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (noting that an alien detained under § 1226(c) "has the keys in his pocket" and can "end[] his detention immediately" by "withdraw[ing] his defense . . . and return[ing] to his native land").  Without a final "decision on whether [he] is to be removed," he is still subject to mandatory detention.  *See Jennings*, 583 U.S. at 303 (quoting 8 U.S.C. § 1226(a) and reading it "together with" § 1226(c)).

What is important is that, notwithstanding the delay, deportation remains a possibility.  *See Jama v. Ashcroft*, 362 F.3d 1117, 1117 (8th Cir. 2004) (published judgment) (reversing habeas relief after concluding that there was a "significant likelihood that the government [would] prevail"); *cf. Zadvydas*, 533 U.S. at 701 ("[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.").  Banyee, after all, is appealing an order that *requires* his removal, which in this case is to Ivory Coast, where he was born and remains a citizen.  *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1229b(a)(3); *see also Demore*, 538 U.S. at 527 (requiring deportation to be "practically attainable" (quoting *Zadvydas*, 533 U.S. at 690)); *cf. Zadvydas*, 533 U.S. at 684, 702 (describing how uncertain citizenship or a lack of repatriation agreements can make deportation "unlikely or unforeseeable" in practice).

There is also no indication that the ongoing proceedings are a ruse "to incarcerate [him] for other reasons."  *Demore*, 538 U.S. at 533 (Kennedy, J., concurring).  The back-and-forth rulings, plus general administrative backlogs, were to blame for his lengthy detention.  As the district court found, there have been no "dilatory tactics" by either side, just tough "substantive arguments" to work through.  Nor is it a problem that the jail the government used also housed criminals.  It takes

---

[4]It may seem like a long wait, but one reason for it is that he is no longer in custody, which puts his case at the back of the line.  *Cf.* Sirce E. Owen, Exec. Off. for Immigr. Rev., Case Management and Docketing Practices 2 (2020) (explaining that "detained aliens" get "priorit[y]").

more to turn otherwise legal detention into unconstitutional punishment. *See Bell v. Wolfish*, 441 U.S. 520, 537 (1979) (considering the due-process rights of pretrial detainees and explaining that "[l]oss of freedom of choice and privacy are inherent incidents of confinement").

## III.

We accordingly reverse the judgment of the district court and remand for the denial of Banyee's habeas petition.

_____